# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PORTIA MCCOLLUM, Derivatively on Behalf of Nominal Defendant THE ESTÉE LAUDER COMPANIES INC., | ) ) ) ) |
| Plaintiff, | ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) ) |
| FABRIZIO FREDA, RONALD S. LAUDER, LEONARD A. LAUDER, WILLIAM P. LAUDER, JANE LAUDER, CHARLENE BARSHEFSKY, ANGELA WEI DONG, PAUL J. FRIBOURG, JENNIFER HYMAN, ARTURO NUÑEZ, RICHARD D. PARSONS, LYNN FORESTER DE ROTHSCHILD, BARRY S. STERNLICHT, JENNIFER TEJADA, RICHARD F. ZANNINO, ROSE MARIE BRAVO, WEI SUN CHRISTIANSON, GARY M. LAUDER, and TRACEY T. TRAVIS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| THE ESTÉE LAUDER COMPANIES INC., | ) ) |
| Nominal Defendant. | ) |

## <u>VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT</u>

Plaintiff Portia McCollum ("Plaintiff"), by and through her undersigned counsel, alleges the following based upon personal knowledge as to matters concerning herself, and upon information and belief as to all others based on, *inter alia*, the investigation of counsel, which includes review and analyses of: (a) the filings of The Estée Lauder Companies Inc. ("Estée" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) news articles, press releases, conference call transcripts, analysts' reports, and other publicly available

information concerning the Company; and (c) the pleadings, Orders, and filings in the securities class actions captioned *West Virginia Laborers Pension Trust Fund v. The Estée Lauder Companies Inc., et al.*, Case No. 1:24-cv-00468 (S.D.N.Y. Jan. 22, 2024) and *McAlice v. The Estée Lauder Companies Inc., et al.*, Case No. 1:23-cv-10669 (S.D.N.Y. Dec. 7, 2023) (together, the "Securities Action").

## NATURE OF THE ACTION

1.      This stockholder derivative action is brought on behalf of Estée against certain current and former Company officers and members of the Company's Board of Directors (the "Board") for breaches of their fiduciary duties in issuing, causing to be issued, or permitting the issuance of materially false and misleading public statements concerning the Company's business, operations, and prospects, during the period of February 3, 2022 to October 31, 2023 (the "Relevant Period").

2.      Estée is a global cosmetics company offering products under several brands, including Estée Lauder, Aramis, Clinique, La Mer, and Bobbi Brown Cosmetics. The Company sells its products through department stores, upscale perfumeries, pharmacies, salons and spas, airports and other duty-free locations, its own authorized retailer websites, and third-party online stores.

3.      "Travel retail" in Asia, including duty-free locations found in airports and cruise ships in China and Korea, are critical to Estée's growth and performance. One particularly important area for the Company's travel retail business is China's southern island province of Hainan, a popular vacation destination.

4.      Resellers have fueled the Company's sales and growth for years, specifically in its travel retail business, through the large-scale purchasing of its products from duty-free stores for

resale in mainland China. COVID-19 lockdowns, which lasted longer in China than in the United States, significantly reduced travel, thus reducing the accessibility of Estée's products to end consumers and hampering demand in its travel retail business. This made resellers even more critical to the Company's sales growth.

5.    In early 2022, regulators in markets including China implemented new restrictions on resellers that rendered the resale business less profitable. The regulations led to a substantial decrease in the resale of Estée's products, causing inventory accumulation and stagnating sales growth.

6.    As set forth below, throughout the Relevant Period, the Individual Defendants (defined below) issued statements that were materially false and misleading and omitted material adverse facts necessary to make the statements not misleading because they failed to disclose that: (i) the Company's revenue growth prior to the Relevant Period was largely fueled by resellers; (ii) new restrictions on resellers were causing them to purchase fewer Estée products; (iii) as a result, the Company was experiencing inventory accumulation and its sales were stagnating; (iv) the Company was forced to offload its excess inventory at discounted prices, driving down its margins; and (v) as a result of the foregoing, the Individual Defendant's positive statements regarding the Company's business, operations, and prospects lacked a reasonable basis.

7.    The truth gradually emerged through a series of partially corrective disclosures. While the Company revealed disappointing financial results three fiscal quarters in a row beginning in November 2022, the Individual Defendants continued to issue false and misleading statements, concealing the full extent of the Company's issues.

8.    Finally, in November 2023, when Estée announced financial results for its fiscal quarter ended September 30, 2023, the Company disclosed a decline in sales attributable to its

travel retail business.

9.     The Individual Defendants, by making and/or causing the Company to make to the investing public a series of materially false and misleading statements about Estée's business, operations, and prospects, breached their fiduciary duties to the Company.

10.    The Individual Defendants also breached their fiduciary duties by causing the Company to fail to maintain adequate internal controls. The Individual Defendants failed to correct and/or caused the Company to fail to correct these false and misleading statements and omissions of material fact, rendering them personally liable to the Company for breaching their fiduciary duties.

11.    As a result of the foregoing, the Securities Action was filed against the Company and certain of its executive officers. In addition to incurring significant costs to defend itself in that action, the Securities Action has exposed the Company to massive class-wide liability.

12.    In addition to the costs and expenses related to defending itself against the Securities Action and exposing Estée to potential liability for class-wide damages, the Individual Defendants' misconduct has caused the Company to waste corporate assets and enabled the Individual Defendants who were improperly overcompensated by the Company to unjustly enrich themselves.

13.    Plaintiff did not make a demand on the Board because, as further detailed herein, the publicly available information confirm demand would be a futile and useless act. Demand is excused as to each of the directors named herein because each faces a substantial likelihood of liability.

<u>**JURISDICTION AND VENUE**</u>

14.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because

Plaintiff's claims raise a federal question under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j(b) and 78t(a)).

15.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

16.    This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

17.    In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Nominal Defendant Estée is headquartered in this District and conducts substantial business in this District. Further, a substantial portion of the acts and omissions alleged herein, including the issuance and dissemination of materially false and misleading information, occurred in this District. Additionally, Estée's common stock trades on the New York Stock Exchange, which is headquartered in New York.

## **PARTIES**

### *Plaintiff*

19.    Plaintiff is, and has been at all relevant times, a continuous shareholder of Estée.

### *Nominal Defendant*

20.    Nominal Defendant Estée is incorporated under the laws of Delaware with its principal executive offices located at 767 Fifth Avenue, New York, New York 10153. Estée's common stock trades on the New York Stock Exchange, which is headquartered in New York, New York, under the ticker symbol "EL."

*Individual Defendants*

21.     Defendant Fabrizio Freda ("Freda") has served as Estée's Chief Executive Officer ("CEO") since July 2009 and as its President since March 2008. Prior to serving as CEO, Defendant Freda served as Estée's Chief Operating Officer ("COO") from March 2008 until June 2009. According to the Company's public filings, Defendant Freda received $21,811,244 in compensation from the Company during the fiscal year ended June 30, 2023. Freda has been named as a defendant in the Securities Action.

22.     Defendant Ronald S. Lauder ("Ronald Lauder") has served as a member of the Board since 2016. Defendant Ronald Lauder served as a member of the Board from 1968 until 1986 and again from 1988 until July 2009 prior to rejoining the Board in 2016. Defendant Ronald Lauder has served as Chairman of the Board from 1988 until 2002. Defendant Ronald Lauder is the son of Company founders Estée and Joseph Lauder, the brother of Defendant Leonard Lauder, and the father of Defendant Jane Lauder. As of July 31, 2023, Defendant Ronald Lauder beneficially owned 4,848,545 shares of Estée Common Stock, worth $872,738,100 and constituting 3.2% of the Company's total voting power.[1]

23.     Defendant Leonard A. Lauder ("Leonard Lauder") served as a member of the Board from 1958 until November 2023. Defendant Leonard Lauder is the son of Company founders Estée and Joseph Lauder, the brother of Defendant Ronald Lauder, and the father of Defendant William Lauder and Gary M. Lauder ("Gary Lauder"). Additionally, the Leonard A. Lauder family beneficially owns the LAL Family Corporation, the beneficial owner of 80,437,628 shares of Estée Class B Common Stock as of July 31, 2023, worth more than $14 billion and constituting 54.1%

---

[1] Valuations of the Individual Defendants' holdings of Company stock are based on the $180.00 per share closing price of Estée's common stock on July 31, 2023.

of the Company's total voting power.

24.     Defendant William P. Lauder ("William Lauder") is the Chairman of the Board and has served as a member of the Board since 1996. Defendant William Lauder serves as a member of the Nominating and Environmental, Social and Governance Committee. Defendant William Lauder has previously served as Estée's CEO between 2004 and 2009, as its President between 2004 and 2008, and as its COO between 2003 and 2004. Defendant William Lauder is the grandson of Company founders Estée and Joseph Lauder, the son of Defendant Leonard Lauder, and the brother of Gary Lauder. According to the Company's public filings, Defendant William Lauder received $7,803,992 in compensation from the Company during the fiscal year ended June 30, 2023. As of July 31, 2023, Defendant William Lauder beneficially owned 8,558,835 shares of Estée Common Stock, worth more than $1.5 billion and constituting 5.7% of the Company's total voting power.

25.     Defendant Jane Lauder has served as a member of the Board since 2009. Defendant Jane Lauder is the granddaughter of founders Estée and Joseph Lauder and the daughter of Defendant Ronald Lauder. As of July 31, 2023, Defendant Jane Lauder beneficially owned 22,507,133 shares of Estée Common Stock, worth more than $4 billion and constituting 15% of the Company's total voting power.

26.     Defendant Charlene Barshefsky ("Barshefsky") has served as a member of the Board since 2001 and serves as a member of the Compensation Committee. According to the Company's public filings, Defendant Barshefsky received $382,014 in compensation from the Company during the fiscal year ended June 30, 2023.

27.     Defendant Angela Wei Dong ("Dong") has served as a member of the Board since 2022 and serves as a member of the Audit Committee. According to the Company's public filings,

Defendant Dong received $286,926 in compensation from the Company during the fiscal year ended June 30, 2023.

28.     Defendant Paul J. Fribourg ("Fribourg") has served as a member of the Board since 2006 and serves as Chair of the Compensation Committee and as a member of the Audit Committee. According to the Company's public filings, Defendant Fribourg received $309,926 in compensation from the Company during the fiscal year ended June 30, 2023.

29.     Defendant Jennifer Hyman ("Hyman") has served as a member of the Board since 2018 and serves as a member of the Audit Committee and the Nominating and Environmental, Social and Governance Committee. According to the Company's public filings, Defendant Hyman received $286,926 in compensation from the Company during the fiscal year ended June 30, 2023.

30.     Defendant Arturo Nuñez ("Nuñez") has served as a member of the Board since 2022 and serves as a member of the Audit Committee and the Compensation Committee. According to the Company's public filings, Defendant Nuñez received $586,926 in compensation from the Company during the fiscal year ended June 30, 2023.

31.     Defendant Richard D. Parsons ("Parsons") has served as a member of the Board since 1999 and serves as a member of the Compensation Committee and the Nominating and Environmental, Social and Governance Committee. According to the Company's public filings, Defendant Parsons received $290,926 in compensation from the Company during the fiscal year ended June 30, 2023.

32.     Defendant Lynn Forester de Rothschild ("Rothschild") has served as a member of the Board since 2000 and serves as a member of the Nominating and Environmental, Social and Governance Committee. According to the Company's public filings, Defendant Rothschild received $282,926 in compensation from the Company during the fiscal year ended June 30, 2023.

33.     Defendant Barry S. Sternlicht ("Sternlicht") has served as a member of the Board since 2004 and serves as a member of the Nominating and Environmental, Social and Governance Committee. According to the Company's public filings, Defendant Sternlicht received $282,926 in compensation from the Company during the fiscal year ended June 30, 2023.

34.     Defendant Jennifer Tejada ("Tejada") has served as a member of the Board since 2018 and serves as Chair of the Nominating and Environmental, Social and Governance Committee. According to the Company's public filings, Defendant Tejada received $283,926 in compensation from the Company during the fiscal year ended June 30, 2023.

35.     Defendant Ricard F. Zannino ("Zannino") has served as a member of the Board since 2010 and serves as Chair of the Audit Committee. According to the Company's public filings, Defendant Zannino received $313,926 in compensation from the Company during the fiscal year ended June 30, 2023.

36.     Defendant Rose Marie Bravo ("Bravo") served as a member of the Board from 2003 until November 2022. According to the Company's public filings, Defendant Bravo received $276,911 in compensation from the Company during the fiscal year ended June 30, 2022.

37.     Defendant Wei Sun Christianson ("Christianson") served as a member of the Board from 2011 until November 2023. According to the Company's public filings, Defendant Christianson received $297,926 in compensation from the Company during the fiscal year ended June 30, 2023.

38.     Defendant Gary Lauder has served as a member of the Board since 2023. Defendant Gary Lauder is the grandson of Company founders Estée and Joseph Lauder, the son of Defendant Leonard Lauder, and the brother of Defendant William Lauder.

39.     Defendant Tracey T. Travis ("Travis") serves as Estée's Executive Vice President and Chief Financial Officer ("CFO").  Travis has been named as a defendant in the Securities Action.

**FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS**

40.     By reason of their positions as officers and directors of Estée, and because of their ability to control the business and corporate affairs of Estée, the Individual Defendants owed Estée and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Estée in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Estée and its shareholders so as to benefit all shareholders equally.

41.     Each director and officer of the Company owes to Estée and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

42.     The Individual Defendants, because of their positions of control and authority as officer and directors of Estée, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

43.     To discharge their duties, the officers and directors of Estée were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

44.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed the Company and its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their

10

obligations as directors and/or officers of Estée, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

45.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the New York Stock Exchange, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's supply chain issues resulting from regulations in the travel retail industry. The Individual Defendants also had a fiduciary duty to disclose the material information necessary to prevent other public statements, including those in its regulatory filings with the SEC, from being materially false, so that the market price of the Company's common stock was based upon truthful, accurate, and fairly presented information.

46.     To discharge their duties, the officers and directors of Estée were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Estée were required to, among other things:

(a)     ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the United States, and pursuant to Estée's own Code of Conduct;

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting

the Company's assets, and to maximize the value of the Company's stock;

       (c)     remain informed as to how Estée conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

       (d)     establish and maintain systematic and accurate records and reports of the business and internal affairs of Estée and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

       (e)     maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Estée's operations would comply with all applicable laws and Estée's public statements, financial statements and regulatory filings were accurate;

       (f)     adequately monitor the Company's officers and employees to ensure their public statements about the Company were complete and accurate;

       (g)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

       (h)     examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

       47.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Estée.

48. Each of the Individual Defendants breached his or her fiduciary duties as alleged herein, both individually and in concert with the other Defendants.

**ESTÉE'S CODE OF BUSINESS CONDUCT**

49. Estée's Code of Conduct begins with a message from Defendants Freda and William Lauder which states, in pertinent part: "As a global leader, our Company is committed to operating responsibly and building a sustainable business based on uncompromising ethics, integrity, fairness, and trust."

50. Estée's Code of Conduct applies to "all employees and officers of The Estée Lauder Companies, Inc., including our global subsidiaries and affiliates, and the members of our Board of Directors," and violations of the Code may result in "disciplinary action, up to and including termination of employment."

51. In a subsection titled "EVERYONE'S RESPONSIBILITIES," the Code of Conduct states, in pertinent part: "We expect everyone to whom our Code applies to conduct our business with uncompromising ethics and integrity, in compliance with the laws and regulations of the countries where we operate."

52. In a subsection titled "ENSURE THE INTEGIRTY OF OUR BOOKS, RECORDS AND FINANCIAL REPORTS," the Code of Conduct states, in pertinent part:

> As a publicly traded company, by law, we are required to publicly disclose certain important information about our Company. When we publicly disclose this information, it is our responsibility to do so in a fair, complete, accurate, timely, and understandable way. We are legally required to be honest and accurate in our financial records, and regulators, investors, and others rely on us to report financial information truthfully, completely, and timely.

> We must keep accurate books and records, including legal documents, that maintain the integrity of our financial reporting. Employees are prohibited from:

> - Making false, misleading, or incomplete statements in connection with an audit of our Company or a filing with the U.S. Securities and Exchange Commission or other government body.

### ESTÉE'S AUDIT COMMITTEE CHARTER

53.     The Company's Audit Committee Charter states that the purpose of the Audit Committee is to "review[] the internal and external accounting and audit processes for The Estée Lauder Companies, Inc."

54.     The Audit Committee Charter tasks the Audit Committee with:

[A]ssist[ing] the Board in fulfilling its responsibilities to oversee the:

1.  Integrity of the Company's financial statements;
2.  Company's compliance with legal and regulatory requirements;
3.  Independent auditor's qualifications and independence;
4.  Performance of the Company's internal audit function and independent auditor; and
5.  Company's policies for risk assessment and risk management.

55.     In a subsection titled "***Audit and Audit-Related Matters***," the Audit Committee Charter states that the Audit Committee shall:

Review and discuss with management and the independent auditor the annual audited financial statements and the quarterly financial statements to be included in the Company's periodic reports, including the disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations," and review with the independent auditor the matters required to be discussed by applicable auditing standards."

56.     In a subsection titled "***Internal Audit***," the Audit Committee Charter states that the Audit Committee shall: "Approve and oversee the charter, policies, and scope of audit plans of the Company's internal audit department."

57.     In a subsection titled "***Risk Oversight***," the Audit Committee Charter states that the Audit Committee shall: "Review and discuss with management, the independent auditor, and the Board the Company's policies with respect to risk assessment and risk management, as well as any significant risks or exposures and the steps management has taken to monitor and control such exposures."

58.     In a subsection titled "***Other Matters***," the Audit Committee states that the Audit Committee shall:

> In connection with the quarterly certifications by the Chief Executive Officer and Chief Financial Officer ("CFO"), receive reports from such officers regarding (i) significant deficiencies in the design or operation of internal controls which could adversely affect the Company's ability to record, process, summarize, and report financial data; (ii) material weaknesses in internal controls; and (iii) any fraud, whether or not material, that involves management or other employees who have a significant role in the Company's internal controls.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

59.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

60.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct were, among other things, to: (i) facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment; (ii) conceal adverse information concerning the Company's operations, financial condition, future business prospects and internal controls; and (iii) artificially inflate the Company's stock price.

61.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully, recklessly, or with gross negligence to engage in improper accounting methods, conceal material facts, fail to correct such misrepresentations, and violate applicable laws. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. The Individual Defendants described herein were direct, necessary, and substantial participants in the common enterprise, and/or common course of conduct complained here because

the action described herein occurred under the authority and approval of the Board.

62.     Each of the Individual Defendants aided, abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in or substantially assisted the accomplishment of that wrongdoing and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

63.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and Estée and was at all times acting within the course and scope of such agency.

## SUBSTANTIVE ALLEGATIONS

### Background

64.     Estée is a global cosmetics company offering products under several brands, including Estée Lauder, Aramis, Clinique, La Mer, and Bobbi Brown Cosmetics. The Company sells its products through department stores, upscale perfumeries, pharmacies, salons and spas, airports and other duty-free locations, its own authorized retailer websites, and third-party online stores.

65.     "Travel retail" in Asia, including duty-free locations found in airports and cruise ships in China and Korea, are critical to Estée's growth and performance. One particularly important area for the Company's travel retail business is China's southern island province of Hainan, a popular vacation destination.

66.     Resellers have fueled the Company's sales and growth for years, specifically in its travel retail business, through the large-scale purchasing of its products from duty-free stores for

resale in mainland China. COVID-19 lockdowns, which lasted longer in China than in the United States, significantly reduced travel, thus reducing the accessibility of Estée's products to end consumers and hampering demand in its travel retail business. This made resellers even more critical to the Company's sales growth.

67.     In early 2022, regulators in markets including China implemented new restrictions on resellers that rendered the resale business less profitable. The regulations led to a substantial decrease in the resale activity on which Estée had come to rely, causing inventory accumulation and stagnating sales growth.

***Materially False and Misleading Statements***

68.     The Relevant Period begins on February 3, 2022, when Estée announced financial results for the fiscal quarter ended December 31, 2022. During the related earnings call, Defendant Freda claimed that the Company was "prosper[ing] in the East with Chinese consumers as well as in global Travel Retail." Defendant Freda further stated that management was "excited about the long-term growth opportunity in the vibrant Asia-Pacific region and, most notably, in China." During the call, Defendant Travis, Estée's Executive Vice President and CFO, touted the Company's business in Hainan specifically, stating that it "continues to be a very strong driver of our travel retail business." Defendant Freda continued, stating "travel retail globally was strong and was accelerating . . . Hainan was very strong, as [Travis] was stating."

69.     On May 3, 2022, Estée announced financial results for its fiscal quarter ended March 31, 2022. During the related earnings call, Defendant Freda attributed the Company's growth to "demand across channels from brick and mortar to online and travel retail" and maintained that "China consumer demand underlining this moment of COVID restrictions is strong." Further, after Travis assured investors that the Company "expect[s] continued growth in

both Mainland China and Hainan," Defendant Freda agreed that Estée's "confidence into Hainan [in the] future is unchanged."

70.     On August 18, 2022, Estée announced financial results for the fiscal quarter and year ended June 30, 2022, disclosing a 9% increase in net sales and an 8% increase in organic net sales from the prior-year period. The Company announced that it would be implementing strategic price increases, mix optimization, and cost savings in certain areas to mitigate the impacts of inflation, supply chain disruptions, and COVID-19 headwinds. During the related earnings call held the same day, Defendant Freda claimed that the Company was anticipating robust growth and profitability for the upcoming year, stating "our more effective cost structure, pricing power and strong cash generation should afford us the flexibility to successfully navigate the ongoing complex environment." Defendant Freda further stated that management was "confident in the long-term opportunity in Mainland China, evidenced by our expansion into almost 100 new doors and 3 additional cities in fiscal year 2022." In response to a question regarding the Company's "underlying market share performance in China . . . as supply returns to normal," Defendant Freda stated:

> [W]e do expect for the full year, China to go back growing double digit. We expect strong recovery in Hainan in the second part, in the second semester of the fiscal year, for sure, a gradual recovery before. That's our assumption, which obviously is going to give us also results in market share.
>
> * * *
>
> We believe the Hainan -- despite the current lockdown, which is obviously painful in the short term, but is a super strong opportunities for the long term, the power of Hainan in the future remain intact, and we have strong presence and market share in this operation.

71.     On August 24, 2022, Estée filed its Annual Report on Form 10-K with the SEC (the "2022 Annual Report"), signed by Defendants Freda, William Lauder, Leonard Lauder, Ronald

Lauder, Jane Lauder, Barshefsky, Bravo, Christianson, Dong, Fribourg, Hyman , Nuñez, Parsons, Rothschild, Sternlicht, Tejada, and Zannino. The 2022 Annual Report contained the following generic and misleading risk disclosure regarding the Company's travel retail business: "Events that impact consumers' willingness or ability to travel or purchase our products while traveling *may impact our business, including travel retail*, a significant contributor to our overall results, and our strategy to market and sell products to international travelers at their destinations."[2]

72.     The 2022 Annual Report further stated:

We approach distribution strategically by product category and location and seek to optimize distribution by matching our brands with appropriate opportunities while seeking to maintain high productivity per door. *We are expanding our brands in online and travel retail, which we believe will be higher growth channels in the long term.*

73.     The Individual Defendants' statements identified above in ¶¶ 68-72 were materially false and misleading and omitted to state material adverse facts necessary to make the statements not misleading because they failed to disclose that: (i) the Company's revenue growth prior to the Relevant Period was largely fueled by resellers; (ii) new restrictions on resellers were causing them to purchase fewer Estée products; (iii) as a result, the Company was experiencing inventory accumulation and its sales were stagnating; (iv) the Company was forced to offload its excess inventory at discounted prices, driving down its margins; and (v) as a result of the foregoing, the Individual Defendant's positive statements regarding the Company's business, operations, and prospects lacked a reasonable basis.

***The Truth Gradually Emerges***

74.     On November 2, 2022, the Company issued a press release announcing financial results for its fiscal quarter ended September 30, 2022. In the press release, the Company revised

---

[2] All emphasis is added unless otherwise indicated.

its financial guidance downward for 2023 "primarily to reflect tighter inventory management in Asia travel retail." The press release continued:

> The Company expects the remainder of the fiscal year to be pressured by the temporary disruptions due to headwinds from the COVID-19 restrictions in China, the strengthening of the U.S. dollar, record-high inflation, supply chain disruptions, and the risk of a slowdown in certain markets globally.

> \* \* \*

> The Company expects its first-half results to be negatively impacted by the ongoing challenges from the COVID-related restrictions affecting Asia travel retail, including tightening of retailer inventory, and mainland China. The Company also expects the tightening of inventory in the United States to negatively impact its first-half results.

75.     On this news, the price of Estée common stock declined more than 8% in one day, closing at $189.96 on November 2, 2022.

76.     Despite this disclosure, the Individual Defendants continued to issue false and misleading statements, concealing the full extent of the Company's issues. During the Company's earnings call held on November 2, 2022, Defendant Freda claimed that management "expect[s] a gradual sequential improvement to low double-digit organic sales growth and high teens adjusted EPS growth on a reported basis in the second half of fiscal year 2023. As these pressures begin to abate, the momentum in other areas of our business builds and our ongoing investments drive growth."

77.     On February 2, 2023, in a press release announcing financial results for the fiscal quarter ended December 31, 2022, the Company again lowered its guidance for fiscal year 2023 due to supply chain issues and issues in its travel retail business:

> For fiscal 2023, we are lowering our outlook given the November and December disruption to travel and staffing levels in Hainan that slowed the expected normalization of inventory and the recently- announced potential roll-back of COVID-related supportive measures in Korea duty free.

78.     On this news, the price of Estée common stock declined 7% in one day, closing at $261.17 on February 6, 2023. However, the Individual Defendants continued to downplay the issue. During the Company's earnings call held the same day, in response to a question regarding Estée's supply chain management in China, Travis stated:

> One, inventory levels are still coming down in Hainan. They are almost at the level that we would expect sales to accelerate. So yes, you should start to see an inventory build related to the shipments that we expect to see in Q4. In Korea, again, the pace is a little bit more uncertain given the transitory nature of what's going on right now.
>
> So we do anticipate, as I mentioned in the prepared remarks, that we will start to see resumption of travel in Korea. And depending on the pace of that resumption, that will depend on the amount of shipments that we have in the quarter. But we have taken obviously an assumption there. We are sitting on a decent amount of inventory even in our own warehouses to supply the sales that we expect to see in the fourth quarter.

79.     Defendant Freda touted Estée's increase in market share and retail sales in China:

> And so China, the results in the quarter were pretty good. We built significant market share. So the overall market in China was negative double digit. Our net sales were -- and our retail was negative single digit, and we built market share in every single category. So in most risers, we build market share in makeup, in fragrance, in health care, in every aspect. Now this, for us, is a very important sign that the -- our brands are really working. The aspirational value of our brands remains very, very strong, which in the moment of reopening is a very strong position to be. So excellent performance relatively to market.

80.     On May 3, 2023, in a press release announcing financial results for the fiscal quarter ended March 31, 2023, the Company again lowered its guidance for fiscal year 2023 due to persistent issues in the Company's travel retail business:

> As the shape of recovery from the pandemic for Asia travel retail comes into better focus, it is proving to be both far more volatile than we expected and more gradual relative to what we experienced in other regions. We are, therefore, lowering our organic sales and EPS outlook for fiscal 2023 to reflect significantly greater headwinds in our fourth quarter than we expected in February.

81.    The press release stated that the Company's "Asia travel retail business continued to be pressured by the slower than anticipated recovery from the COVID pandemic. Specifically, in Hainan, while traffic into the island exceeded prior year levels, conversion of travelers to consumers in prestige beauty lagged. This led to the slower than anticipated depletion of elevated levels of retailer inventory and, therefore, lower replenishment orders."

82.    During the related earnings call held the same day, in response to a question regarding the Company's reduced guidance, Defendant Freda claimed:

> [I]n theory it's really an issue of inventories versus pace of recovery. Another proof of that is our retail in travel retails is so much stronger than our net. So, you have a minus 45% in Quarter 3 versus a single- digit decline in retail. So, there is a lot of inventory absorption which is going on with the recovery. And, a lot of the speed of this absorption will depend on the speed of the recovery that we have in front in us. We are estimating that given the trend in this period in the Quarter 4, retail will go positive, and then, the absorption will continue to improve over time, and definitely continue in Quarter 1 of next fiscal year.

83.    Analysts at Deutsche Bank reacted to the Company lowering its guidance for the third consecutive quarter, stating "[w]hile we appreciate the complexity of current challenges in EL's travel retail (TR) business, the sheer magnitude of the reduced outlook and associated operating deleverage raises questions related to EL's capabilities vis-à-vis demand forecasting, visibility, and supply-chain agility in its most profitable geography and channel."

84.    On this news, the price of Estée common stock declined 17 percent in one day, closing at $202.70 on May 3, 2023. The price of Estée common stock remained artificially inflated however, as the Individual Defendants continued to issue false and misleading statements. For example, during the May 3, 2023 earnings call, Defendant Freda claimed that "the challenges in travel retail are abating."

85.    On August 18, 2023, Estée announced financial results for its fiscal quarter and year ended June 30, 2023, including a substantial decrease in sales largely attributable to the travel

retail markets in China and Korea. On this news, the price of Estée common stock declined 3.3 percent, closing at $156.69 on August 18, 2023. However, the Individual Defendants continued to issue false and misleading statements. During the related earnings call held the same day, Defendant Freda claimed that management believed Estée was "well positioned to return to organic sales growth and improve profitability." Defendant Freda further claimed that Estée had "created the base of much more information and timely information to take the right decisions in coordination[,]" regarding its travel retail business.

86.     Finally, on November 1, 2023, Estée announced financial results for its fiscal quarter ended September 30, 2023. The Company disclosed a decline in sales attributable to its Asia travel retail business. The Company further disclosed that inventory issues were preventing it from effectively responding to changes in the market. In connection with these disclosures, Estée cut its net sales estimate for fiscal year 2024.

87.     On this news, the price of Estée common stock declined nearly 19% in one day, closing at $104.51 on November 1, 2023.

88.     As a direct and proximate result of the Individual Defendants' misconduct, the Company has incurred significant financial losses, including the costs of defending itself in the Securities Action, exposure to class-wide liability in the Securities Action, as well as additional losses, including reputational harm and loss of goodwill.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

89.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties by the Individual Defendants.

90.     Estée is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

91.     Plaintiff is a current shareholder of Estée and was a continuous shareholder of the Company during the period of the Individual Defendants' wrongdoing alleged herein. Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

92.     At the time this action was commenced, the fifteen-member Board was comprised of Defendants Barshefsky, Dong, Freda, Fribourg, Hyman, Nuńez, Parsons, Rothschild, Sternlicht, Tejada, Zannino, Jane Lauder, Ronald Lauder, William Lauder, and Gary Lauder (the "Director Defendants"). Accordingly, Plaintiff is only required to show that eight directors cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. As set forth below, all of the Board's current directors are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, including because they face a substantial likelihood of liability, and so demand on the Board to institute this action is not necessary because such a demand would have been a futile act.

93.     The Director Defendants, together and individually, violated and breached their fiduciary duties of candor, good faith, and loyalty. Specifically, the Director Defendants knowingly approved and/or permitted the wrongs alleged herein and participated in efforts to conceal those wrongs. The Director Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized, and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein. Accordingly, the Director Defendants could not fairly and fully prosecute such a suit even if they instituted it.

94.     The Director Defendants either knowingly or recklessly issued or caused the Company to issue the materially false and misleading statements alleged herein. The Director Defendants knew of the falsity of the misleading statements at the time they were made. As a result of the foregoing, the Director Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

95.     As members of the Board charged with overseeing the Company's affairs, each of the Director Defendants had knowledge, or the fiduciary obligation to inform themselves, of information pertaining to the Company's core operations and the material events giving rise to these claims. Specifically, as Board members of Estée, the Director Defendants knew, or should have known, the material facts surrounding the Company's supply chain issues resulting from regulations in the travel retail industry.

96.     Defendant Freda is not disinterested or independent and therefore, is incapable of considering a demand because he is named as a defendant, and faces significant personal liability, in the Securities Action based on substantially the same wrongdoing as alleged herein, specifically issuing materially false and misleading statements during the Relevant Period.

97.     Defendants Dong, Fribourg, Hyman, Nuńez, Zannino, and Tejada serve as members of the Audit Committee and/or served as members of the Audit Committee during the Relevant Period and, pursuant to the Audit Committee Charter, were specifically charged with the responsibility of assisting the Board in fulfilling its oversight responsibilities related to internal controls over financial reporting and public disclosure requirements. Throughout the Relevant Period, however, these Defendants breached their fiduciary duties to the Company by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding material deficiencies in the Company's accounting practices and the adequacy of the

Company's internal controls as alleged above. Therefore, Defendants Dong, Fribourg, Hyman, Nuñez, Zannino, and Tejada cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihood.

98.     Additionally, each of the directors received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company. Indeed, all of the Director Defendants benefitted directly from the wrongdoing alleged herein. Specifically, the Director Defendants benefitted from the artificial inflation of the price of the Company's stock and the resulting increase in the value of Estée stock and stock options they held.

99.     The Director Defendants, as members of the Board, were and are subject to the Company's Code of Conduct. The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the Director Defendants to also adhere to Estée's standards of business conduct. The Director Defendants violated the Code of Conduct because they knowingly or recklessly engaged in and participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. Because the Director Defendants violated the Code of Conduct, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile

100.     Furthermore, demand in this case is excused because each of the directors derive substantial revenue from the Company, control the company, and are indebted to each other. These conflicts of interest have precluded the current directors from adequately monitoring the Company's operations and internal controls and calling into question the other Individual Defendants' conduct. Significantly, none of the Board's current members have taken remedial action to redress the conduct alleged herein. As Defendants Jane Lauder, Ronald Lauder, William

Lauder, Leonard Lauder, and Gary Lauder are members of the same family, they are particularly indebted to each other. Accordingly, Director Defendants Jane Lauder, Ronald Lauder, William Lauder, and Gary Lauder are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

101.    The Director Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the directors can claim exculpation from their violations of duty pursuant to the Company's charter. As a majority of the directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein. They cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

102.    The acts complained of herein constitute violations of fiduciary duties owed by Estée's officers and directors, and these acts are incapable of ratification.

103.    The Director Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., monies belonging to the stockholders of Estée. If there is a directors' and officers' liability insurance policy covering the Individual Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Individual Defendants, known as, inter alia, the "insured-versus-insured exclusion." As a result, if the Director Defendants were to sue themselves or certain officers of Estée, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be

expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

104.    If there is no directors' and officers' liability insurance, then the Director Defendants will not cause Estée to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event as well.

105.    Accordingly, for all of the reasons set forth above, all of the current directors cannot consider a demand with disinterestedness and independence. Consequently, a pre-suit demand on the Board is futile and excused.

<u>**COUNT I**</u>

**Against the Individual Defendants for Violations of § 10(b)
of the Exchange Act and Rule 10b-5**

106.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

107.    The Individual Defendants violated § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

108.    The Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the materially false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

109.     The Individual Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff in connection with her purchases of Estée common stock.

110.     The Individual Defendants acted with scienter because they: (a) knew that the public documents and statements issued or disseminated in the name of Estée were materially false and misleading; (b) knew that such statements or documents would be issued or disseminated to the investing public; and (c) knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws.

111.     The Individual Defendants, by virtue of their receipt of information reflecting the true facts of Estée, their control over, and/or receipt and/or modification of Estée's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Estée, participated in the fraudulent scheme alleged herein.

112.     As a result of the foregoing, the market price of Estée common stock was artificially inflated during the relevant time period. In ignorance of the falsity of the statements, Plaintiff, relied on the statements described above and/or the integrity of the market price of Estée common stock in purchasing Estée common stock at prices that were artificially inflated as a result of these false and misleading statements and was damaged thereby.

113.    In addition, as a result of the wrongful conduct alleged herein, the Company has suffered significant damages, including the costs and expenses incurred in defending itself in the Securities Action and reputational harm. The Individual Defendants, through their violation of § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, have exposed the Company to millions of dollars in potential class-wide damages in the Securities Action.

## COUNT II

### Against the Individual Defendants
### for Breach of Fiduciary Duty

114.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

115.    The Individual Defendants owed the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

116.    The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

117.    The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to guide the truthful dissemination of Company news to the investing public and to the Company's shareholders, allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

118.    As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

119.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

## COUNT III

### Against the Individual Defendants for Aiding and Abetting Breach of Fiduciary Duty

120.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

121.    By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breaches of their fiduciary duties. In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

122.    Plaintiff on behalf of Estée has no adequate remedy at law.

## COUNT IV

**Against the Individual Defendants
for Unjust Enrichment**

123.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

124.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Estée.

125.    The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Estée that was tied to the performance or artificially inflated valuation of Estée, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

126.    Plaintiff, as a shareholder and a representative of Estée, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

127.    Plaintiff on behalf of Estée has no adequate remedy at law.

## COUNT V

**Against the Individual Defendants
for Waste of Corporate Assets**

128.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

129.    The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the time period in issue. It resulted in continuous, connected, and ongoing harm to the Company.

130.     As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, inter alia: (a) paying and colleting excessive compensation and bonuses; and (b) incurring potentially millions of dollars of legal liability and/or legal costs, including defending the Company and its officers against the Securities Action.

131.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

132.     Plaintiff on behalf Estée has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.       Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual Defendants do not participate therein or benefit thereby;

B.       Directing all Individual Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds, and imposing a constructive trust thereon;

C.       Awarding punitive damages;

D.       Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.       Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: February 1, 2024

**RIGRODSKY LAW, P.A.**

By:  */s/ Gina M. Serra*
Seth D. Rigrodsky
Timothy J. MacFall
Gina M. Serra
Vincent A. Licata
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Email: sdr@rl-legal.com
tjm@rl-legal.com
gms@rl-legal.com
vl@rl-legal.com

**OF COUNSEL:**

**GRABAR LAW OFFICE**
Joshua H. Grabar (#5906953)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (267) 507-6085
Email: jgrabar@grabarlaw.com

*Attorneys for Plaintiff*